UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ELIZABETH HUGHES and DONNA GRAHAM, | Civil No. 05-1536 (PJS/JJG) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SANCTIONS |
| BLACK & DECKER (US), INC. | |
| Defendant. | |

---

Daniel N. Sacco, FLYNN GASKINS & BENNETT, LLP, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for plaintiffs.

Russell S. Ponessa, HINSHAW & CULBERTSON LLP, 333 South Seventh Street, Suite 2000, Minneapolis, MN 55402, for defendant.

Plaintiffs Elizabeth Hughes and Donna Graham[1] bring this product liability action against defendant Black & Decker (US), Inc. ("Black & Decker"), alleging that a toaster oven manufactured by Black & Decker caused a fire in their kitchen. This matter is before the Court on Black & Decker's motion for spoliation-of-evidence sanctions. For the reasons set forth below, Black & Decker's motion is granted in part.

I. BACKGROUND

On June 5, 2000, Graham returned home to discover that her house was filled with smoke. As she called 911 on her cell phone, she walked around to her back porch and looked

---

[1] Although this case is formally brought in Hughes's and Graham's names, this is in fact a subrogation action brought by their insurer, State Farm.

through a window into the kitchen. She saw flames on top of an appliance cart, near the location of a toaster oven. Firefighters arrived within a few minutes and extinguished the fire.

Tom Lawrence, a State Farm claim team manager, learned of the fire the next day and spoke with Hughes. Lawrence Dep. 43. Lawrence was aware that there was a potential subrogation claim, and he engaged the services of Mark Bishop, a fire investigator, to inspect the scene. Lawrence Dep. 46, 55. Bishop interviewed Graham and examined and photographed the fire scene. Based on his investigation, Bishop concluded that the fire was caused by an electrical malfunction in the toaster oven. Bishop Dep. 25; Ponessa Aff. Ex. 6 at 4. Bishop removed the toaster oven from the fire scene, as well as the three-way power plug into which the toaster oven had been plugged and a microwave and toaster that were located near the toaster oven.

At some point, State Farm determined that the toaster oven was manufactured by Black & Decker. But within a few days of the fire — well before it notified Black & Decker of any potential claim — State Farm permitted a demolition and repair company to begin work on the plaintiffs' home. The fire scene was thus completely destroyed before Black & Decker had an opportunity to inspect it. Lawrence Dep. 68, 72. Black & Decker now asks the Court to sanction State Farm by excluding evidence, including expert testimony, concerning the origin and cause of the fire.

II. ANALYSIS

District courts have inherent authority to impose sanctions when a party destroys evidence that it knows or should know is relevant to potential litigation and thereby prejudices

its potential adversary. *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993).[2] State Farm argues that the Court cannot impose any sanction in the absence of a finding of bad faith.

A finding of bad faith is necessary to impose certain sanctions, such as an outright dismissal or an adverse-inference instruction. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (dismissal); *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 746-47 (8th Cir. 2004) (adverse-inference instruction). But the Court may impose other types of sanctions in the absence of a bad-faith finding. *See Stevenson*, 354 F.3d at 745 ("[A] finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions."). To exclude evidence, for example, the Court need only find that State Farm knew or should have known that the evidence was relevant to potential litigation. *Dillon*, 986 F.2d at 267.

In this case, State Farm certainly knew or should have known that the fire scene was important evidence relevant to a potential subrogation claim. Although State Farm argues that it did not learn the identity of the toaster oven's manufacturer until months after the fire scene was destroyed, there is absolutely no reason why State Farm could not have discovered that fact almost immediately simply by *asking* the homeowners if they knew who manufactured their toaster oven. (At least one of the homeowners — Hughes — knew that the toaster oven had been made by Black & Decker. Hughes Dep. 21.) State Farm could have identified Black & Decker as the manufacturer and been on the phone to Black & Decker within hours after the fire was extinguished. State Farm's behavior was inexcusable.

---

[2]Black & Decker argues that state law governs in this diversity case, but the extent of the Court's inherent power to sanction for destruction of evidence appears to be a question of federal law. *Cf. Fakhro v. Mayo Clinic Rochester*, No. 02-626 (JNE/JGL), 2004 WL 909740, at *2 (D. Minn. March 31, 2004) (evidentiary matters are procedural and therefore governed by federal law).

That said, other evidence suggests that State Farm did not act in bad faith. First, State Farm had no motive to destroy evidence that another appliance — and not the toaster oven — caused the fire. Black & Decker argues that the refrigerator or the stove may have caused the fire. But State Farm did not manufacture the refrigerator or the stove. At the time it inspected the fire scene, it did not matter to State Farm whether it would have to file a subrogation action against the manufacturer of a toaster oven or the manufacturer of a refrigerator. What mattered to State Farm is that it *correctly* identified the cause of the fire, as the success of its future subrogation action would depend on it. Second, after State Farm identified the toaster oven as the likely cause of the fire, it preserved not only the toaster oven, but also other possible igniters located nearby. Under these circumstances, the Court finds that State Farm did not act in bad faith, although the question is not free from doubt.

State Farm's conduct prejudiced Black & Decker. Experts for both sides agree that a party who is able to conduct a first-hand investigation of a fire scene has an advantage over a party who has access only to second-hand evidence. Bishop Dep. 109; Hoffmann Aff. ¶ 9. State Farm argues that it preserved all of the potential igniters near the appliance cart, but Black & Decker offers some evidence that the fire may not have started near the appliance cart at all. Black & Decker's lack of opportunity to examine the entire fire scene and its resulting inability to offer first-hand evidence in support of its theory is clearly prejudicial.

That leaves the question of a remedy. Ordinarily, State Farm's lack of bad faith would preclude the Court from dismissing the case or from giving an adverse-inference instruction. *Menz*, 440 F.3d at 1006; *Stevenson*, 354 F.3d at 746-47. Presumably, it would also preclude the Court from barring evidence that is so critical to State Farm's case that its exclusion would for

practical purposes be the equivalent of dismissal. The Eighth Circuit has not addressed this issue, but common sense suggests that, when excluding evidence would be *tantamount* to dismissing a case, a finding of bad faith is necessary. It would be odd to require bad faith to dismiss a case *de jure* — or even to give an adverse-inference instruction, a sanction far less serious than dismissal — but to require only negligence to dismiss a case *de facto*. Thus, the Court's conclusion that State Farm did not act in bad faith partially ties the Court's hands when it comes to fashioning a remedy.

At oral argument, however, the Court was candid in informing State Farm that, while the Court was leaning against finding bad faith, the Court was also concerned that merely excluding some evidence would be insufficient to sanction State Farm's conduct or to remedy the prejudice to Black & Decker. State Farm, to its credit, then stipulated that the Court may give an adverse-inference instruction, even in the absence of a finding of bad faith. Docket No. 35. The Court will do so. In addition to giving the adverse-inference instruction, the Court will also prohibit Bishop from testifying at trial (a measure to which State Farm has also consented). Docket No. 35.

Black & Decker argues that the Court should go further and exclude all evidence of the cause and origin of the fire. Such a ruling would be tantamount to dismissal, though. As described above, the Court concludes that, absent a finding of bad faith, the Court cannot exclude evidence when doing so would, as a practical matter, differ little from dismissing the case. In addition, although State Farm deserves to be sanctioned, the Court does not believe that its conduct warrants such a drastic remedy.

In sum, to sanction State Farm for its spoliation of the fire scene, the Court will give an adverse-inference instruction and bar Bishop from testifying at trial.[3] But expert witnesses for both sides may rely on Bishop's photographs, on physical evidence retrieved from the fire scene, and on the factual observations (as opposed to opinions) contained in Bishop's report. In that way, evidence that is critical to determining the source of the fire (such as the photographs) will be available to the jury, but the expert witnesses retained by State Farm will not have access to any evidence that is not equally available to the expert witnesses retained by Black & Decker.

This is, admittedly, far from a perfect solution. Black & Decker is correct that permitting State Farm's experts to rely on the photographs, physical evidence, and factual observations will in some sense allow State Farm to continue to skew the case through its spoliation. But the tools available to the Court to remedy prejudice caused by spoliation are limited and rather blunt. Moreover, the Court must be concerned not just with punishing State Farm and remedying the prejudice to Black & Decker, but, more than anything, with helping the jury to determine the truth. "An adverse inference instruction is a powerful tool in a jury trial." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900 (2004). That instruction, together with the exclusion of Bishop's testimony, is adequate to address State Farm's misconduct in this case.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

---

[3]Black & Decker has recently filed a separate motion to exclude the testimony of State Farm's experts under the Federal Rules of Evidence. That motion will be considered on its merits at a later time in conjunction with Black & Decker's motion for summary judgment.

1. Defendant's motion for spoliation-of-evidence sanctions [Docket No. 10] is GRANTED in part and DENIED in part.

2. Defendant's motion is GRANTED in that Mark Bishop will not be permitted to testify, his opinions will not be admitted into evidence, and the jurors will be instructed that they may draw an adverse inference from State Farm's failure to preserve the fire scene for Black & Decker to inspect.

3. Defendant's motion is DENIED in all other respects.

Dated: January 10, 2007

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge